# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                      CRIMINAL ACTION

VERSUS

JONATHAN E. JOUETTE                           NO. 17-00009-BAJ-RLB

## RULING AND ORDER

Defendant pleaded guilty to one count of unlawful possession of a firearm by a convicted felon, and was sentenced to a term of 180 months imprisonment under the Armed Career Criminal Act's ("ACCA") three-strike enhancement, 18 U.S.C. § 924(e). The U.S. Court of Appeals for the Fifth Circuit affirmed Defendant's sentence, and the U.S. Supreme Court denied review.

Now Defendant seeks to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255.[1] The Government opposes Defendant's Petition. (Doc. 51). For reasons below, Defendant's Petition will be denied.

## I.   BACKGROUND

On February 2, 2017, the Grand Jury returned a two-count Indictment charging Defendant with (1) unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and (2) possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). (Doc. 1).

---

[1] Defendant's petition consists of three separate filings: Defendant's *pro se* **Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. 42),** Defendant's *pro se* **Addendum To Motion (Doc. 49)**, and Defendant's *pro se* **Supplement To 2255 Motion (Doc. 56)**. For ease of reference, the Court refers to these filings collectively as the "Petition."

On April 4, 2017, the Court granted the United States' motion to dismiss Defendant's drug charge after forensic analysis determined that the suspected methamphetamine was not, in fact, a controlled substance. (Docs. 15, 16).

Two weeks later, on April 20, 2017, Defendant appeared in Court with counsel, and, under oath, pleaded guilty to the gun count. (Doc. 17). During the plea colloquy, the Court described the elements of the offense in the following terms:

> The Court: … As you know, sir, having read the Indictment, Count One of the Indictment charges you with possessing a firearm after having been convicted of a felony offense in violation of Title 18, United States Code Section 922(g)(1). Now, that provision specifically prohibits persons who have been convicted of felony offenses from owning firearms and ammunitions and other items. Do you understand that, sir?
>
> The Defendant: Yes, sir.
>
> The Court: Now, in order for you to be convicted of this offense, the United States would be required to prove at a trial, by competent evidence and beyond a reasonable doubt, each of the following elements: first, that you knowingly possessed a firearm as described in the indictment; second, that before you possessed the firearm you had been convicted in a court of law of a crime punishable by imprisonment for a term in excess of one year. That is a felony offense. And third; that at some point in time the firearm that you possessed passed in or was affected by or in interstate or foreign commerce; that is, that it came to the united states from another nation or it came to the state of Louisiana from another state. Do you understand that, sir?
>
> The Defendant: Yes, sir.
>
> The Court: Do you understand that these are the elements which the Government would be required to prove if we proceeded to trial in your case?
>
> The Defendant: Yes, sir.
>
> (Doc. 33 at pp. 6:16-7:23).

2

After confirming his understanding of the elements of the offense, Defendant further confirmed: (i) he understood the statutory maximum penalties; (ii) he understood that the Sentencing Guidelines applicable to his case are determined by the Court and are advisory only; (iii) he understood the rights he was giving up by pleading guilty; (iv) his decision to plead guilty was not "influenced, induced, or persuaded" by any "promises of leniency," "threats," or representations regarding "what actual sentence" would be imposed if he pleaded guilty; and (v) he had adequate opportunity to confer with his counsel and was satisfied with his counsel's "advice and services." (*Id.* at pp. 8:6-17:12). In the process, Defendant specifically confirmed his understanding that his sentence could be enhanced under the ACCA, based on his prior felony convictions:

> The Court: I don't know anything about your criminal background at this point. At the conclusion of this hearing I will order a presentence investigation be conducted. The presentence investigation will determine your prior criminal history. If I determine, as Mr. Casey [the Assistant United States Attorney] has indicated to you, that you have three or more prior convictions, you may be -- I may be required to sentence you under the Armed -- what is called the Armed Career Criminal Act. Do you understand that?
>
> The Defendant: Yes, sir. I'm aware of the Criminal Act.
>
> The Court: Have you discussed that with Mr. Scott [Defendant's Attorney]?
>
> The Defendant: Yes, sir.
>
> Mr. Scott: I've reviewed it with him, if nothing else, out of an abundance of caution.
>
> The Court: Thank you, Mr. Scott. So it's important that you understand that there may be a minimum sentence here of at least 15 years[,]

3

maximum to life.

The Defendant: Yes, sir.

The Court: What that also means, as Mr. Casey described earlier, is that the period of supervised release goes from three years to five years. And if you violate any terms and conditions of supervised release, you're subject to an additional five-year jail term. Do you understand that, sir?

The Defendant: Yes, sir.

(Doc. 33 at pp. 19:10-20:22).

After confirming his understanding of the potential penalties, Defendant admitted to the following factual basis for his offense, as set forth by the Assistant United States Attorney:

Mr. Casey: … Your Honor, the United States believes that if this matter went to trial, we would call witnesses and produce evidence that would provide the following: on January 9, 2016, in the Middle District of Louisiana, Jonathan E. Jouette, the Defendant herein, after having been convicted of a felony, knowingly possessed the firearm that had previously been shipped or transported in interstate or foreign commerce. The defendant had been convicted of at least one felony before January 9, 2016.

On or about December 5, 2012, in the 23rd Judicial District Court in Ascension Parish, Docket No. 30761, the Defendant was convicted of distribution of a Schedule II controlled dangerous substance, a felony. On April 20, 2016, the defendant was interviewed and admitted to knowingly possessing the firearm on January 9, 2016. The firearm was a Russian SKS 7.62 x 39 caliber rifle bearing Serial No. 3, a Russian or Cyrillic symbol, 110, which contains numbers in a Cyrillic or Russian symbol.

The ATF determined that this Russian SKS rifle had not been manufactured in Louisiana. Accordingly, being found in East Baton Rouge Parish, the firearm had traveled in or affected interstate or foreign commerce. Those are the facts, Your Honor.

(Doc. 33 at pp. 23:6-24:6).

4

Immediately thereafter, the Court specifically queried Defendant regarding his understanding of the facts set forth above:

> The Court: … Let me ask you, sir: were you in possession of that rifle on January 9, 2016?
>
> The Defendant: Yes, sir.
>
> The Court: All right. Is it true that you -- before accepting possession of that rifle, is it true that you were convicted in the 23rd Judicial District in Ascension Parish of a felony offense; namely, the distribution of a Schedule II controlled substance?
>
> The Defendant: Yes, sir.
>
> **The Court: And you understood that was a felony. Correct?**
>
> **The Defendant: Yes, sir.**
>
> The Court: And is it true that you at some point admitted that you knowingly possessed that rifle?
>
> The Defendant: Yes, sir.
>
> The Court: Let me ask you again, sir: do you fully understand the charge contained in Count One of the Indictment as well as the elements of that offense as I have explained them to you?
>
> The Defendant: Yes, sir.

(Doc. 33 at p. 25:1-23 (emphasis added)).

Finally, Defendant confirmed again that he understood the consequences of pleading guilty, that he was pleading guilty because he was guilty in fact, and that he was pleading guilty voluntarily and of his own free will. (Doc. 33 at pp. 25:24-26:8).

Based on these sworn representations, the Court accepted Defendant's guilty plea, and adjudicated Defendant guilty of possessing a firearm in violation of 18 U.S.C. § 922(g)(1). (*Id.* at p. 26:9-22).

On July 3, 2017, the United States Probation Office released its Presentence Investigation Report (PSR). (Doc. 20). In relevant part, the PSR determined that Defendant qualified as "an armed career criminal … subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e)," based on three prior felony convictions entered in the 23rd Judicial District Court, Gonzales, Louisiana for: (1) possession with the intent to distribute marijuana, a Schedule I controlled dangerous substance (plea entered June 14, 2012, under Docket No. 28405); (2) burglary of a pharmacy (plea entered April 7, 2014, under Docket No. 30760); and (3) distribution of hydrocodone, a Schedule II controlled dangerous substance (plea entered April 7, 2014, under Docket No. 30761). (*See* Doc. 20 ¶¶ 28, 41-43). The proposed ACCA-enhancement resulted in a statutory minimum sentence of 15 years (or 180 months) imprisonment, falling at approximately the mid-point of the otherwise applicable guideline imprisonment range of 168-210 months (based on Defendant's total offense level of 30 and criminal history category of VI).  (Doc. 20 ¶¶ 31, 49, 76).

Prior to sentencing, Defendant, through counsel, submitted multiple objections to the PSR. Relevant here, Defendant objected to paragraphs 42 and 43—setting forth the factual basis of Plaintiff's April 7, 2014 convictions for burglary of a pharmacy and distribution of hydrocodone, respectively—asserting that these paragraphs lacked sufficient detail to adequately understand the nature of these related offenses. (Doc. 23 at p. 3). In turn, Defendant also objected to his ACCA enhancement, arguing that, at most, only *one* of his April 7, 2014 convictions could serve as an ACCA

6

predicate because the underlying records show that (1) his conviction for burglary of a pharmacy was based on a non-violent "theft of pharmaceuticals from a delivery vehicle trailer while the driver was making a delivery inside the store," and (2) his convictions for "theft of the pharmaceuticals and distribution of the pharmaceuticals [were] effectively simultaneous, and therefore cannot be considered as [separate] offenses committed 'on occasions different from one another.'" (Doc. 23 at pp. 4, 7).

At Defendant's August 31, 2017 sentencing hearing, the Court sustained Defendant's objection to paragraphs 42 and 43, agreeing that the PSR should accurately reflect the factual basis for Defendant's predicate convictions. (*See* Doc. 34 at pp. 6:21-8:2). As a result, these paragraphs were each amended to reflect the following:

> According to a police report prepared by the Ascension Parish Sheriff's Office, on December 7, 2012, a detective was assigned a case regarding the burglary of pharmaceuticals from an enclosed utility trailer. An employee of Hackbarth Delivery Services reported to the detective that on December 6, 2012, while making a delivery at a Walgreens in Geismar, Louisiana, several cases of medications were taken from his locked trailer. The employee indicated the lock was cut and was no longer present on the trailer. A witness stated he observed a truck back up to the utility trailer. The witness saw a black male taking items from the trailer and place them in the truck.
>
> On December 13, 2012, Crime Stoppers and Ascension Parish Dispatch received information regarding Jonathan Jouette being involved in the burglary of the trailer transporting pharmaceuticals. After investigating the tip, it was learned the defendant, and Doug Savoy cut the lock off the trailer and began grabbing random crates. A confidential informant notified officers that the defendant and Savoy went back to the residence of Keysha Templet and divided the medication. The defendant had Adderall 30mg, Lortab 7.5mg, Percocet 10 and 5mg, Vyvance 40,50, and 60mg, Soma, and Morphine. The CI informed them that the

pharmaceuticals were brought to the residence of Jody Gautreau.

On December 15, 2012, Ascension Parish Sheriff's deputies executed a search warrant at the residence of Jody Gautreau. After locating several pills, Gautreau reported that she agreed to sell the pills for Jonathan Jouette. Jouette told Gautreau the pills came from the pharmaceutical trailer. After selling several pills, she provided Jouette with $800. Gautreau provided the officers with a voluntary statement regarding the incident. Bob Stafford, Gautreau's son, arrived at the police office and provided a statement that Jouette called him on the day of the incident requesting a ride. Stafford said that Jouette was carrying a drawstring bag containing several medications. During the ride, Jouette called several individuals attempting to sell the medication. Upon arrival at a Piggly Wiggly grocery store, Jouette provided another individual with a Dixie cup full of miscellaneous pills. Stafford informed the detective where Jouette was located in Scottsboro, Alabama.

On December 15, 2012, the Scottsboro Police Department informed the Ascension Parish Sheriff's Office that the defendant was arrested.

(Doc. 23 at pp. 3-4).

Nevertheless, the Court overruled Defendant's objection to application of the ACCA enhancement, determining that Defendant's April 7, 2014 convictions were each separate predicate offenses under the ACCA. Most relevant here, the Court explained that its analysis of whether Defendant's burglary of a pharmacy conviction qualified as a "violent felony" under the ACCA was limited to reviewing the fact of Defendant's conviction itself and the elements of the underlying offense, without regard for the specific circumstances of Defendant's crime:

The Court: … the Supreme Court has been clear about when District Courts can look beyond or behind the conviction, the facts leading to the charges. And it is pretty clear in [*Taylor v. United States*, 495 U.S. 575 (1990)] and in other cases that the Court must consider solely the conviction and the statute to which the defendant was found guilty and not to the facts.

8

Now[], that's -- it's a harsh reality, and it's a -- some would say, I think, a harsh application of the law. And sometimes, as we all know, that kind of a harsh application of the law results in sentences that might in some cases, as in this case, be disproportionate to the crime. The irony, of course, is that we are here to do justice, and that is what we strive to do every day. Having said that, our hands nonetheless are tied.

Now, I -- suffice it to say that I have read everything that you have provided, Mr. Scott. And I'll just tell you right now, you've done a superb job. You have done a magnificent job amassing the facts and providing an analysis that have been exceptionally persuasive. And if I had the ability, I would absolutely sustain your objection. It should be sustained. But unfortunately we have these couple of cases, these directives from the Supreme Court and the Circuit that simply, as you know, prevent me from doing so.

Now, you've also done a great job, I think, of amassing evidence for the record that hopefully will prove very useful in the appeals process. And I wish you the best in the appeals process, sir. But again, for the reasons cited in the probation officer's report and for the reasons I've already described, unfortunately the Court must overrule your Objection No. 4.

(Doc. 34 at pp. 15:7-16:16).  Still, the Court admitted Defendant's proffer of the police report, plea agreement, and *Boykin* Form underlying April 7, 2014 convictions. (Doc. 23 at pp. 10-11; *see* Doc. 36).

Ultimately, the Court sentenced Defendant to a term of imprisonment of 180 months—the statutory minimum under the ACCA—followed by a three-year term of supervised release. (Doc. 34 at pp. 27:20-30:25).

The Court entered its Judgment on September 1, 2017 (Doc. 29), and Defendant timely appealed (Doc. 28). On appeal, Defendant challenged only his ACCA-enhanced sentenced, again arguing that his prior Louisiana conviction for burglary of a pharmacy should not have counted as a predicate offense, and, further, that his two April 7, 2014 convictions should not have counted as separate ACCA-

9

predicates because they occurred on the same day. (Doc. 40 at pp. 3-4). The Fifth Circuit rejected Defendant's arguments, and affirmed Defendant's sentence. (*Id.* at p. 5). On October 1, 2018, the Supreme Court denied review. (Doc. 41).

On September 18, 2019, Defendant filed his *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. 42), the first of three filings challenging his conviction and sentence. Thereafter, on May 4, 2020 Defendant submitted his *pro se* Addendum To Motion (Doc. 49), followed on July 14, 2021 by his *pro se* Supplement To 2255 Motion (Doc. 56). Liberally construed, these filings collectively seek to vacate Defendant's conviction and sentence on the following grounds: (1) Defendant is actually innocent of his offense of conviction; (2) Defendant's guilty plea was not voluntary because he was not advised that a conviction under 18 U.S.C. § 922(g) requires proof that he knew he was a felon at the time he committed the instant offense; (3) Defendant's counsel was inadequate for having failed to effectively challenge his ACCA enhancement; and (4) Defendant's ACCA-enhanced sentence is unlawful because his 2014 burglary conviction and 2012 possession with intent to distribute marijuana conviction are not ACCA predicate offenses. The Government opposes Defendant's Petition. (Doc. 51)  A hearing on this matter is not necessary.

## II.    LAW AND ANALYSIS

### A.  Standard

Section 2255 is designed to remedy constitutional errors and other injuries that

could not be brought on direct appeal and would result in injustice if left unaddressed. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Specifically, the statute sets forth four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Hill v. United States*, 368 U.S. 424, 426–27 (1962). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing." 28 U.S.C. § 2255(b).

A defendant seeking relief under section 2255 must plead sufficient facts to establish a prima facie case of a constitutional violation. *United States v. Woods*, 870 F.2d 285, 287 (5th Cir. 1989). "[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* at 288 n.3.

Finally, and importantly, the defendant must show "actual prejudice" resulting from a constitutional violation in order to warrant relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). "Actual prejudice" occurs when the constitutional error "had substantial and injurious effect or influence" on the outcome of the proceeding. *See id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

11

### B. Discussion

#### 1. Actual Innocence

At the outset, Defendant asserts that he is entitled to relief because he is "actually innocent of a violation of Section 922(g)," explaining: "I was not in the knowledge [sic] I was in the status of breaking federal law, thus I was innocent of the crime. Because all elements weren't committed I was innocent." (Doc. 42 at p. 4).

This claim fails for two reasons. First, quite simply, "[t]he Fifth Circuit does not recognize freestanding claims of actual innocence on federal habeas review." *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009); *see Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003) (collecting cases). Instead, "a credible showing of actual innocence" merely allows a prisoner to overcome a procedural default so that his underlying constitutional claims may be considered on the merits. *See Floyd v. Vannoy*, 894 F.3d 143, 154 (5th Cir. 2018) (quotation marks omitted).

Second, even assuming that what Defendant now says is true—that is, he did not know he was "breaking federal law" by possessing a firearm—this is not enough to establish a "credible" actual innocence claim. Why? Because, as it relates to state of mind, a conviction under Section 922(g)(1) requires proof only that Defendant (1) *knew* he possessed a firearm and (2) *knew* he was a felon when he possessed it, *not* (3) that he knew federal law prohibited him from possessing a firearm.[2] *See United*

---

[2] Of course, a conviction under Section 922(g)(1) also requires proof that the defendant had been convicted previously of a felony, and that the firearm possessed traveled in interstate commerce. *Trevino*, 989 F.3d at 406.

*States v. Trevino*, 989 F.3d 402, 403 (5th Cir. 2021). Put differently, Defendant's "ignorance of the law ... is no excuse" for his violation, much less the basis of a constitutional claim of error. *See id.* (quoting *Rehaif v. United States*, 139 S. Ct. 2191, 2198 (2019)).

## 2. Sufficiency Of Defendant's Guilty Plea

Next, Defendant complains that his guilty plea was not voluntary because (1) he did not know that federal law prohibited him from possessing a firearm at the time of the instant offense, (2) Defendant's counsel and the Court each failed to advise him that a felon-in-possession conviction requires the Government to prove that he knew he was a felon when he committed the offense, and (3) the factual basis of Defendant's plea likewise did not establish that he knew he was a felon when he committed the offense. (Doc. 42 at p. 5; Doc. 49 at p. 8).

Defendant's first complaint is easily dismissed for the reasons set forth above— that is, a Section 922(g) conviction does not require proof that Defendant knew that federal law prohibited him from possessing a firearm. *Trevino*, 989 F.3d at 403.

Defendant's second and third complaints require more serious consideration. It is now clear, based on the Supreme Court's holding in *Rehaif v. United States*, that a Section 922(g)(1) conviction requires proof that Defendant knew he was a felon at the time of the offense. *Rehaif*, 139 S. Ct. at 2200.[3] And, on this point, Defendant is

---

[3] The Supreme Court decided *Rehaif* two years after Defendant entered his plea. Previously, the United States has conceded that *Rehaif* established a new rule of statutory law, and is therefore retroactively applicable on collateral review. *See U.S. v. Kelly*, No. 15-00148-BAJ-EWD, Doc. 102 at 32 (M.D. La. June 22, 2020) ("Everybody seems to agree that *Rehaif*

correct that the Court's *Boykin* examination did not advise him that knowledge of his own felon status *is* an element of unlawful possession under Section 922(g), (*see* Doc. 33 at pp. 6:16-7:23), and, further, that the Government's proffered factual basis does not reflect Defendant's knowledge of his felon status, (*see id.* at pp. 23:6-24:6). Obviously, this was error. *Rehaif*, 139 S. Ct. at 2200.

A showing of error, however, is only the first step. The Fifth Circuit has held that to prevail on a *Rehaif* claim, the Defendant "must show that any error under *Rehaif* actually prejudiced the outcome" of his case. *United States v. Lavalais*, 960 F.3d 180, 184 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2807 (2021). Moreover, the Fifth Circuit has instructed that, as a general rule, a defendant is *not* prejudiced by a *Rehaif* error—and, therefore, *cannot* prevail in a *Rehaif* claim—where "the record contains substantial evidence that he knew of his felon status." *See id.* at 188 (quoting *United States v. Hicks*, 958 F.3d 399, 402 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2810 (2021)).

Here, the evidence is clear that Defendant knew of his felon status. First, and most important, Defendant expressly *admitted* his knowledge at his sworn re-arraignment examination:

> The Court: … Let me ask you, sir: were you in possession of that rifle on January 9, 2016?
>
> The Defendant: Yes, sir.

---

establishes a new rule of statutory law … and that the case is retroactively applicable … on collateral review [of] a timely, first motion under § 2255.").

The Court: All right. Is it true that you -- before accepting possession of that rifle, is it true that you were convicted in the 23rd Judicial District in Ascension Parish of a felony offense; namely, the distribution of a Schedule II controlled substance?

The Defendant: Yes, sir.

**The Court: And you understood that was a felony. Correct?**

**The Defendant: Yes, sir.**

(Doc. 33 at p. 25:1-14 (emphasis added)). Whatever Defendant's current misgivings, it is clear from Defendant's contemporaneous sworn statements that he knew his felon status when he committed the instance offense. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977). ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Second, in addition to having admitted his knowledge under oath, Defendant's criminal history leaves little doubt that he knew he was a felon. Prior to the instant offense, Defendant racked up *at least 10* Louisiana felony convictions, all of which resulted from guilty pleas, for offenses ranging from criminal property damage, to possession and distribution of controlled substances, to burglary, to possession of a firearm as a convicted felon. (Doc. 20 at ¶¶ 33-46). In other words, Defendant is well-experienced in criminal court, and his substantial criminal record is compelling circumstantial evidence that he knew of his status when he pleaded guilty to the instant offense. *See Lavalais*, 960 F.3d at 184 ("Convicted felons typically know

they're convicted felons. And they know the Government would have little trouble proving that they knew. So it is hard to imagine how their conviction or guilty plea was prejudiced by any error under *Rehaif*.").

Taken together, this evidence leaves little doubt that Defendant knew he was a felon when he committed the instant offense, *and* when he pleaded guilty to it. Thus, Defendant suffered no prejudice as a result of counsel's or the Court's failure to advise him that a Section 922(g) conviction requires proof that he knew of his status, or the Government's failure to include such proof in its proffered factual basis.

### 3. Ineffective Assistance Of Counsel

Defendant's ineffective assistance of counsel claims focus exclusively on counsel's efforts to challenge his ACCA-enhanced sentence. Defendant asserts that counsel was ineffective for (1) failing to "timely object to the predicates used for the ACCA enhancement," (2) failing to request an "earlier" evidentiary hearing to establish the "circumstances" of his prior convictions; and (3) failing to "properly" challenge his ACCA enhancement on appeal. (Doc. 42 at p. 8; Doc. 49 at p. 5).

The Sixth Amendment guarantees criminal defendants the "right to effective assistance of counsel at every critical stage of the proceedings against them." *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001). This right "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. at 5, 124 (2003).

The Court reviews claims of ineffective assistance of counsel under the two-

16

pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show: (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced his defense—*i.e.*, "there is a reasonable probability that but for counsel's poor performance the result of the proceeding would have been different." *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012). "Both of these prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

> Importantly, judicial scrutiny of counsel's performance must be highly deferential. When evaluating the first *Strickland* criterion, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Further, we must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (quotation marks and citations omitted).

Defendant's first two complaints against his attorney essentially collapse into one: counsel failed to timely challenge the three predicate offenses underlying his enhanced sentence. As stated, Defendant's ACCA-enhancement is based on his June 2012 conviction for possession with the intent to distribute marijuana; his April 2014 conviction for burglary of a pharmacy; and his April 2014 conviction for distribution of hydrocodone. (Doc. 20 ¶ 28). Among these, the record reflects that counsel objected

17

to counting his two April 2014 convictions as ACCA predicate offenses at the earliest possible opportunity—*i.e.*, after the U.S. Probation Office issued its PSR recommending an ACCA-enhanced sentence. (*See* Doc. 23 at pp. 3-8). Thereafter, counsel persisted in his objection at Defendant's sentencing hearing, and even developed and introduced evidence in support of his objections, (Doc. 34 at pp. 6:21-16:19; *see* Doc. 36). On this record, there is simply no factual basis for Defendant to complain that counsel failed to timely "challenge" his two April 2014 convictions. *See Blackledge*, 431 U.S. at 74 ("[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

By contrast, counsel did *not* object to counting Defendant's 2012 conviction for possession with intent to distribute marijuana. The Fifth Circuit has now held, however, that possession with intent to distribute marijuana under Louisiana law is categorically a "serious drug offense" within the meaning of the ACCA. *United States v. Barlow*, 17 F.4th 599, 604 (5th Cir. 2021) ("We hold that Barlow's convictions under Section 40:966(A) for 'possession with intent to distribute [marijuana]' are 'serious drug offenses' for the purpose of sentence enhancement under the ACCA.").[4] Thus, any objection to this predicate would have been frivolous, and Defendant cannot show

---

[4] The Fifth Circuit reached this conclusion based on its analysis of an earlier version of Louisiana's statute criminalizing possession of marijuana within intent to distribute, La. R.S. § 40:966 (2004). The distinction is without difference, however, because the subsequent version of the statute to which Defendant pleaded guilty contained the same substantive elements and penalties. *Compare id. with* La. R.S. §§ 40:966 (2010).

that counsel's performance was deficient *or* that he suffered prejudice as a result. *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (deficient performance cannot be established based on counsel's failure to make futile motions or frivolous objections).

This leaves only Defendant's complaint that counsel failed to "properly" challenge his ACCA enhancement on appeal. (Doc. 42 at p. 8). Again, as a matter of fact, the record reflects that counsel *did* challenge Defendant's sentencing enhancement on appeal, albeit unsuccessfully. Absent any additional detail regarding what Defendant believes counsel should have done differently, this threadbare allegation is "insufficient to raise a constitutional issue." *Woods*, 870 F.2d at 287 n.3.

### 4. ACCA Enhancement

Finally, Defendant argues that his ACCA-enhanced sentence is unlawful because his 2014 burglary of a pharmacy conviction is not a "violent felony" under the analysis set forth in *United States v. Johnson*, 576 U.S. 591 (2015), (Doc. 49 at p. 6), and because his 2012 conviction for possession with intent to distribute marijuana is not a "serious drug offense" under the analysis set forth in *Mathis v. United States*, 579 U.S. 500, 520 (2016), (Doc. 56).

As an initial matter, these arguments are now procedurally barred because they could have been raised on direct appeal but were not (as noted by the Fifth Circuit in its opinion affirming Defendant's sentence (*see* Doc. 40 at p. 4)). *See United*

*States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." (quotation marks omitted)).

Defendant's default may be excused if he can show "both cause for his procedural default and actual prejudice resulting from the error," which may be established upon a credible showing of actual innocence or ineffective assistance of counsel on appeal. *See id.* As set forth above, Defendant has not put forth a credible claim of actual innocence.

This leaves ineffective assistance of appellate counsel. Here, again, however, Defendant cannot show deficient performance *or* prejudice resulting from counsel's failure to raise Defendant's arguments under *Johnson* and *Mathis* because any such arguments clearly would have failed.

First, *Johnson* plainly has no relevance. That case involved the constitutionality of the ACCA's "residual clause," which previously allowed *unenumerated* prior felonies to be counted as ACCA-predicates provided that they "involve[d] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). After nearly a decade of hand-wringing, the Supreme Court finally struck down the "residual clause," holding that it was impermissibly vague, and therefore "violate[d] the Constitution's guarantee of due process." *Johnson*, 576 U.S. at 606.

20

The problem for Defendant is that his ACCA-sentence is *not* based on a residual clause analysis. Rather, it is based on this Court's "categorial approach" analysis, and its determination that the *elements* of Defendant's 2014 burglary of a pharmacy conviction are narrower than "the elements of generic burglary," thus allowing Defendant's conviction to be counted as an ACCA-predicate.[5] *See Mathis v. United States*, 579 U.S. 500, 504 (2016) As required, the Court conducted this analysis "while ignoring the particular facts of [Defendant's] case."[6] *Id.*

Second, Defendant's *Mathis* challenge to his 2012 drug offense is also a non-

---

[5] "Generic burglary" means "an unlawful or unprivileged entry into ... a building or other structure, with intent to commit a crime." *Mathis*, 579 U.S. at 504 (quoting *Taylor v. United States*, 495 U.S. 575, 598 (1990)). Under Louisiana law, burglary of a pharmacy means "the unauthorized entry of any building, warehouse, physician's office, hospital, pharmaceutical house, or other structure used in whole or in part for the sale, storage and/or dispensing of controlled dangerous substances, as defined in R.S. 40:961(7), with the intent to commit the theft of any drug which is defined as a controlled dangerous substance in R.S. 40:961(7)." La. R.S. § 14:62.1(A) (2006). Plainly, the elements of Louisiana burglary of a pharmacy are narrower than those of generic burglary in *two* respects: first, the defendant must enter a structure used for storing/dispensing controlled substances (as opposed to entering just any structure); second, the defendant must intend to steal controlled substances (as opposed to committing just any crime). *Cf. United States v. Montgomery,* 974 F.3d 587, 593 (5th Cir. 2020) (holding that a Louisiana simple burglary of an inhabited dwelling "is arguably narrower than generic burglary because the building or structure must be 'used in whole or in part as a home or place of abode.'"), *cert. denied*, 141 S. Ct. 2823 (2021).

[6] Defendant's primary complaint continues to be that the Court should have looked past the fact of his burglary conviction to the actual circumstances of the crime, which make clear that "[t]he 'potential for violence' was zero.'" (Doc. 49 at 6). Unfortunately for Defendant, this approach simply is not permitted under the law (as explained by the Court at sentencing). Instead, under the "categorical approach," the Court must "focus solely on whether the elements of [Louisiana burglary of a pharmacy] sufficiently match the elements of generic burglary, while ignoring the particular facts of the case." *Mathis*, 579 U.S. at 504; *see also Johnson*, 576 U.S. at 596 ("Under the categorical approach, a court assesses whether a crime qualifies as a violent felony in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." (quotation marks omitted)).

starter, in light of the Fifth Circuit's recent holding that a conviction for possession with intent to distribute marijuana under Louisiana law is categorically a "serious drug offense" within the meaning of the ACCA. *See Barlow*, 17 F.4th at 604.

In sum, Defendant's 2014 burglary conviction and 2012 drug conviction were each properly counted as ACCA-predicate offenses, and Defendant cannot show ineffective assistance based on appellate counsel's failure to raise his arguments on appeal.

### C. Certificate Of Appealability

Reasonable jurists would not debate the denial of Defendant's Petition, or the correctness of the Court's substantive rulings that Defendant has failed to make a substantial showing of the denial of a constitutional right. Accordingly, Defendant will be denied a certificate of appealability. *See United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997).

## III.   CONCLUSION

In sum, Petitioner has failed to show that he is entitled to relief.  Accordingly,

**IT IS ORDERED** that Defendant's Petition—consisting of Defendant's *pro se* **Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. 42),** Defendant's *pro se* **Addendum To Motion (Doc. 49)**, and Defendant's *pro se* **Supplement To 2255 Motion (Doc. 56)**—be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability be and is

hereby **DENIED**.

**IT IS FURTHER ORDERED** that the United States' **Motion For Extension Of Time To Respond To Motion To Vacate, Set Aside, Or Correct Sentence Pursuant To 28 U.S.C. § 2255 (Doc. 48)** and Defendant's **Motion To Appoint Counsel (Doc. 54)** be and are hereby **TERMINATED AS MOOT**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant's related action No. 3:17-cr-00009-BAJ-RLB be and is hereby **TERMINATED** and **CLOSED** consistent with the denial of relief set forth herein.

Baton Rouge, Louisiana, this 11th day of August, 2022.

**BRIAN A. JACKSON, JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

23